## John D. Andrews and another v. John J. Beck.

The possession of negroes, is *primâ facie* evidence of title, against a naked tres-
passer.

A judgment, which shows upon its face, that it was rendered in 1842, by an
attorney, who (the judge having been of counsel,) the parties agreed should
preside on the trial, is a nullity, and will not protect an officer, in executing
process issued under it. At that time, there was no law authorising a sub-
stitution.

A writ of possession for the slaves, "Silva, and her child," does not justify
the seizure of "Silva, Lewis, and James," without any evidence of their
identity.

If it be irregular for the District Court to order a change of venue, before ser-
vice upon the only defendant resident in the county where suit is brought;
or, after the change of venue, for the court where suit was brought, without
notice to the defendants, to make an entry, *nunc pro tunc*, of an order of the
court that occurred before the change of venue; such irregularities are cured
by appearance, and plea to the merits.

It is not incumbent on the court, to interpose merely to preserve the regularity
of its proceedings, as to matters waived by the action of the parties.

A motion of an attorney, as the friend of the court, cannot be treated as the
exception of the parties; on it, the court can do only what, if properly in-
formed, it would do without motion.

Appeal from Hunt. Tried below before the Hon. William
S. Todd.

This suit was commenced in the District Court of Kaufman
county, on the 19th of September, 1853, by the appellee,
against John D. Andrews, of Harris county, Andrew J. Fowler,
of Anderson county, and James Eagan, of Kaufman county,
for the recovery of a negro woman, Silva, and her children,
Lewis and Jim, alleged to have been wrongfully taken from his
possession.

Service appeared to have been had upon Andrews and Fowler,
but not upon Eagan, while the case was pending in that county.
At the Spring Term, 1854, the case was continued, because the
presiding judge had been of counsel, in another cause, involving
the same matters in controversy. At the Fall Term, 1854, the

record showed that, the plaintiff failing to appear, the case was, on motion of the defendants, dismissed for want of prosecution. At the Spring Term, 1855, on motion of the plaintiff, the venue was changed to the county of Hunt, upon the ground that the presiding judge having been of counsel, was disqualified from sitting therein. At the Fall Term of the District Court of Hunt county, A. Morrell, Esq., as *the friend of the court*, moved to dismiss the case, because it appeared from the transcript of the record of the proceedings had in the District Court of Kaufman county, that the case had been dismissed by the court, at its Fall Term, 1854, for want of prosecution. This motion did not appear to have been acted upon, but, on suggestion of the *defendants*,* leave was granted them, to obtain a more perfect transcript, and the case was continued by consent. At the Fall Term, 1855, of the District Court of Kaufman county, on application of the plaintiff, an order was made, *nunc pro tunc*, that, the judge of the ninth judicial district being disqualified to sit in the cause, the order to dismiss the cause, made by the said judge, at the Fall Term, 1854, be set aside, and the cause re-instated upon the docket.

On the 7th of May, 1856, the defendants answered, (among other things,) that the said negroes were taken by virtue of a writ of possession issued to the sheriff of Kaufman county, from the District Court of Galveston, upon a judgment rendered by the said court on the 13th day of September, 1842, in favor of League, Andrews & Co.; and that the plaintiff knew that the said negroes were the property of the defendant, Andrews, but combining collusively with others, had gotten the said negroes out of his possession in Harris county, and run them off. On the same day on which this answer was filed, W. H. Johnson, Esq., as *the friend of the court*, filed the motion copied in the opinion of the court, which was overruled.

Upon the trial, the plaintiff proved that he purchased the negroes in controversy, in the fall of 1849, and held possession of

* So in the record.—REPORTERS.

them as his property, until October or November, 1851, when the defendants came to his house, and Eagan, who at that time was acting as the sheriff of Kaufman county, and as he said, by virtue of a writ issued from Galveston county, which he had in his possession and exhibited, took the negroes out of the plaintiff's possession, and delivered them to the defendant, Andrews.

The defendants, in proof of their plea of justification, offered in evidence a copy of a judgment of the District Court of Galveston county, rendered on the 13th of September, 1842, in favor of League, Andrews & Co. v. Charles and Stephen Beasley, for a number of negroes, and among them a negro woman, "Silva, and her child;" and a copy of a writ of possession issued thereon, upon the 21st of August, 1851, to the sheriff of Kaufman county; and the return endorsed thereon, by the defendant Eagan, as sheriff. The plaintiff then introduced a copy of the entire proceedings had in the cause, in which the said writ of possession was issued; from which it appeared, that the judge of the District Court of Galveston county having been of counsel of one of the parties in that cause, it was agreed, that F. H. Merriman, Esq., should preside as judge, upon the trial of the case. Immediately after this agreement was made, a trial was had; but the bills of exceptions taken on the trial were signed by R. Morris, the presiding judge of the said court, who had signed the agreement to substitute a judge.

The court instructed the jury, that the said judgment and writ of possession were nullities, and furnished no justification to the defendants.

There was a verdict in favor of defendant, Fowler; and for the plaintiff, against the other defendants, Andrews and Eagan; from which they appealed.

*B. W. Gray*, for the appellants.

*J. W. Durant*, for the appellee.

ROBERTS, J.—The possession of the negroes by Beck, was

*primâ facie* evidence of ownership, and authorised him to maintain this suit against the defendants below, who took the slaves out of his possession, unless they could establish some superior right in themselves.

This they failed to do.   1st.  Because the writ of possession under which the defendants acted, was founded on a judgment in the District Court of Galveston county, which the court correctly declared to be a nullity.   The judgment shows upon its face, by the agreement of counsel, inserted in it and made a part of it, that the judge of the first Judicial District was of counsel in the cause, and that, for that reason, the parties agreed to substitute an attorney of the court, to preside in the trial of the cause.   The bill of exceptions purports to have been signed by Morris, the presiding judge, and not by his substitute, Merriman, the attorney.   This does not show that the judge presided at the trial, but only serves to explain how the case was conducted under the agreement of substitution; and that, though the attorney tried the case, it was made to appear upon the papers, as if done by the judge.   This judgment purports to have been rendered in 1842, when there was no provision of the constitution or law which authorised a substitution.   It being manifest, from the record itself, that it was really rendered by a person who was not a judge, it must be regarded as a nullity. (Wynns and Lawrence v. Underwood, 1 Texas Rep. 48.)

2d.   Because the slaves " Silva and her child," named in the writ of possession, were not identified, by any evidence whatever, to be the slaves, " Silva, Lewis, and James," which were taken from Beck's possession, and sued for in this action.

Another point made, arises upon the following assignment of error, relating to the irregularity of the proceedings in this cause, to wit: " The court erred in overruling defendants' motion to dismiss this cause."

The motion referred to is the following : " And now, at this term of the court, comes W. H. Johnson, as a friend of the court, and moves the court to strike this cause from the docket, for the want of jurisdiction.   1st.  Because the change of venue

was made from the county of Kaufman to Hunt, before the defendant Eagan, the only resident defendant of said county of Kaufman, had been served with process. 2d. Because after the change of venue from Kaufman to Hunt, an entry reinstating the case, *nunc pro tunc* (was made) in the county of Kaufman, without notice to the defendants. 3d. The case cannot be pending at one and the same time, in Kaufman and Hunt; two counties cannot have jurisdiction at one and the same time.

W. H. JOHNSON, friend of the court."

· By a bill of exceptions, it appears, that, upon the calling of the cause for trial, this motion was overruled.

The defendants had appeared and pleaded to the merits, without any other exceptions having been filed, than those presented as friend of the court. Under these circumstances, the court did not err in overruling this motion. Admitting the full force of the exceptions taken in this motion, they were irregularities which the parties might waive, by pleading to the merits, and proceeding with the cause without objection. Having done so, it was not incumbent upon the court to interpose, merely to preserve the regularity of its proceedings. A motion made by an attorney, as a friend of the court, cannot be treated as the exception of the parties. And the court can do, on such a motion, only what it would do, if properly informed, without a motion. This results from the attitude of the person who assumes to make such a motion. (1 Burrill, 67; 1 Tomlin, 75.)

These are the questions in the case. Any further discussion of it, would result in a mere explanation of the record, which is somewhat confused. We are of opinion, that there is no substantial error, as the record is presented.

Judgment affirmed.